## JOHN H. THURMAN v. STATE OF OHIO.

1. DELAY OF TRIAL CURING PREMATURE SERVICE OF PANEL ON ACCUSED.

A defendant, being charged with murder in the first degree, a copy of the panel of the jury returned by the sheriff was delivered to him, less than three days before the day first fixed for his trial, but at that time the case was reset for trial more than three days later. The case was then tried, against the objection of the defendant that the copy of the panel was not served on him at least three days before the trial. There was no error in this.

2. PEREMPTORY CHALLENGE AS EACH JUROR IS CALLED.

Nor was there error in the action of the court requiring the defendant to decide whether he would exercise his right of peremptory challenge to each juror as called, and not set aside for cause, and in not allowing him to wait until twelve persons not challenged for cause were in the box.

3. RECORD MUST SHOW WHAT EXCLUDED EVIDENCE WOULD PROVE.

The court refused to allow a witness to testify for the defendant as to a conversation had by him with the defendant a few minutes before the homicide. It was not disclosed by counsel what he proposed to prove by the witness, and there is nothing in the record to show that the action of the court was erroneous.

4. ERROR IN RULING OUT EVIDENCE CURED.

Where competent evidence is given, and the record, (by mistake or otherwise,) shows that it was ruled out by the court on the application of the other party, and in the subsequent cross-examination of the witness by such other party the same evidence is repeated, and goes to the jury without objection, the error of the court in ruling out the evidence first given is cured, and there is no prejudice to the party offering such evidence.

5. PUTTING HAND IN PISTOL POCKET.

It was the claim of the defendant that just before the killing of Parker by him, the latter had put his hand to his pistol pocket, as if to draw a weapon therefrom, and that the defendant then shot him to protect his own life. He sought to prove by another witness that on several other occasions he had seen Parker do the same thing—but there was no offer to prove that the defendant had seen this, or that he had any knowledge of what had taken place at either of these times. Such evidence was not competent, and was rightly excluded.

6. PROOF OF REPUTATION OF THE ACCUSED.

A question on behalf of the accused, as to his reputation for peace among journeymen painters with whom he is associated, is improper. The question should be as to his reputation among those who knew or associated with him. But as the proposed answer is not given there is no ground for reversal.

7. ERRONEOUS CHARGE NOT ACTED UPON.

In a murder case, an erroneous charge on the subject of premeditation is not prejudicial, if the accused was not convicted of the first degree.

8. IMPROPER QUESTION—DENIAL.

In a murder case, a question by the prosecutor to the accused, while testifying, asking as to whether his wife had not kept an assignation house, is improper, but as it was denied by the accused, no error arose.

9. IRRELEVANT CONVERSATION.

The accused cannot testify to a conversation between himself and his wife, many months before the homicide, as to a visit of deceased to his home, in his absence, and what took place.

10. OPINION AS TO SANITY OF ACCUSED.

The accused cannot ask his own witness, in chief, what would be witness' opinion of the sanity of the accused, if he should hear that accused had committed a murder.

11. PROVOCATION NEED ONLY BE RECENT.

To constitute a homicide manslaughter the provocation need not be offered at the time of the affray; it must merely be so recent as to show there was not time for the blood to cool. But as the only provocation shown was months before the killing, this error in a charge is not prejudicial, being merely an abstract proposition.

12. PROOF OF CHARACTER AS A DANGEROUS MAN.

The proper question in chief is as to the general character or reputation of the accused. as a dangerous man, leaving special circumstances to the cross-examination. Hence the offer of accused to prove how the deceased treated men in his employ was properly refused.

13. ERROR WAIVED BY WANT OF OBJECTION.

Though a statement to the jury in the prosecutor's argument that "this is a case of murder in the first degree and the people are watching you," might be improper, yet if the counsel for accused make no objection at the time, and asked no charge, but drew from it in his comments to the jury an argument in favor of accused, the objection is too late, no actual prejudice being shown.

14. STATEMENTS BY PROSECUTOR OUTSIDE THE EVIDENCE.

Where the prosecutor in his argument to the jury made a statement of facts outside the evidence, and was at once reprimanded by the court, and the jury told to disregard the statement, and the fact stated is utterly immaterial to the issue, a conviction will not be reversed.

15. WIFE AN INCOMPETENT WITNESS.

In a murder trial the wife of accused is not a competent witness in his behalf.

ERROR to the Court of Common Pleas of Hamilton county.

SMITH, J.

Very many errors are assigned in this case, and a multitude of exceptions were taken to the rulings of the court during the trial. We have attempted to consider all which were called to our attention, where proper exception was taken, and will notice and dispose of them as briefly as possible.

1. The objection that the panel of the jury was not delivered to the defendant three days before the trial, is not well taken. It was in fact given to him three days before the commencement of the trial, though not so long before the day on which the case was set to be tried. The court for this reason laid the case over to a future day, so that more than three days did intervene between the time he received it and the day the trial commenced.

2. The action of the court in requiring the defendant to decide whether he would peremptorily challenge each juror as called and not set aside for cause, and without allowing him to wait until twelve persons were in the box, was not erroneous, as held in Schufflin v. State, 20 O. S., 233.

3. It is claimed that the court erred in refusing to allow the defendant to prove by the witness Murphy, the conversation between them some fifteen ·or

twenty minutes before the homicide. We can readily see that there might have been a conversation between them which the defendant would have been entitled to prove, but there is nothing in the record to show what he proposed to prove by the witness, and therefore nothing to show that the court erred in its ruling.

4. In answer to a question to a witness, competent to speak as to the character of Thurman for peace and quietness, the witness answered without objection, that he was a peaceable man, and that he had never heard anything to the contrary. He was then asked if he had ever heard any one say that defendant had ever had a quarrel with anybody. To this question an objection was interposed by the prosecuting attorney, and the objection was sustained. Then follows this statement in the bill of exceptions, "Motion to strike out previous answer of witness by counsel for state granted, and defendant by his counsel excepts."

We are satisfied, from the statement of the attorneys for the state, that in this particular the bill of exceptions does not correctly state what really occurred. That it was an answer by the witness to the last question about a quarrel that was stricken out. This answer, however, does not appear in the bill, and the record states that it was the answer to the previous question, as to the character of Thurman, that was stricken out. This answer was competent, and it would have been error in the court to have excluded it, and unless the error on the bill as it now appears, has been cured in some way, we would feel obliged to reverse the judgment on this ground. But we think it was cured. On pages 232-3, following this, while the same witness was being cross-examined by the prosecuting attorney, he testified that he had known Thurman for twenty years, and that his reputation for peace and quiet had always been good; that he had never heard anything different, and knew nothing different—that he never heard anything against him, and that when he said what he had to the jury concerning his reputation, he was simply giving his own opinion of the man, viz., that he was a peaceable, quiet man. That he was not endeavoring to say what other people said of him, or thought of him, but simply his own opinion. Now, this statement made to the prosecuting attorney, not only contains the substance, but almost the exact language of his statement in chief, and was even stronger than the language before used, and this went to the jury, curing any error in ruling out the first statement.

5. The question put to a witness as to Thurman's reputation for peace among journeyman painters, with whom the witness associated, was not proper. His reputation, or character, among those who knew or associated with him, was relevant and proper. But, aside from this, the record does not disclose what the witness was expected to prove. And the same thing may be said as to the greater part of the exceptions taken to the refusal of the court to allow evidence to be given. This is necessary to show that there was error in the rulings upon such matters, and in such cases the exceptions will not be further noticed.

6. A witness was asked by defendant's counsel, if he ever saw Parker (the deceased), when talking to a person in an excited manner, put his hand behind him to what is known as the pistol pocket, and as if to draw a pistol therefrom, the claim of the defendant being that he shot Parker to prevent him from shooting him. The court refused to allow the question to be answered, and defendant excepted and offered to prove by the witness, that he had seen Parker do this on several occasions, but there was no offer to prove that the defendant saw or had any knowledge of this. We are of the opinion that such testimony was not competent —that it was too remote. It was not "evidence of the existence or non-existence of any fact in issue, or of any fact relevant to any fact in issue." It can readily be seen that it would lead the court and jury into an examination of as many separate issues as there were occasions testified to by the witness, and whether Parker was justified in doing as he did, and therefore was incompetent.

7. The question put to a witness as to the manner in which Parker treated men in his employ was not proper. The inquiry in chief, should in a case like this

be confined to the general character or reputation of the deceased, as a peaceable or dangerous man and special circumstances be gone into only on cross-examination.

8.  The parol evidence as to the contents of a certain circular letter was properly excluded.  There was no sufficient proof of the loss of the originals; and if there had been, we see no relevancy in the evidence, but as we understand, it was afterwards admitted without objection.

9.  A witness, in answer to a question of defendant as to the character of Parker as a dangerous man, answered that "he had a bad tongue—that is all." This was excluded, and properly.  It was not responsive and was not competent.

10.  The question put by defendant's counsel to his own witness in chief, to the effect that if he should hear that defendant had committed murder, what his opinion would be as to his sanity, was improper.

11.  The court properly refused to allow the defendant to testify as to a conversation between himself and his wife, many months before the homicide, as to a visit of Parker to his house in his absence, and what then took place.  We see no ground upon which it can be held competent.

12.  The question put by the prosecuting attorney to the defendant while on the witness stand, whether his wife had not kept an assignation house in the city, seems to us uncalled for, and improper, and the court should have sustained the objection made to it.  But as the answer of the defendant was an explicit denial of the fact, and as no other witness was examined in relation thereto, it stood on his denial, and we see no reason to believe that the defendant was prejudiced thereby.

13.  We think it clear under the rulings of the supreme court, that Mrs. Thurman, admitted to be the wife of the defendant, was not a competent witness in his favor in this case.  The court did not therefore err in refusing to allow her to be sworn and examined.

14.  Complaint is made of the charge of the court on the subject of premeditation.  The language of the charge on this point is almost identical, and certainly in substance is the same which has been approved in several cases by our supreme court.  But as the defendant was not convicted of murder in the first degree, even if the charge was erroneous, it can not be said to have been prejudicial.

15.  We incline to the opinion that the charge of the court to the effect that the provocation inducing the sudden heat or transport of passion which would make an unlawful killing only manslaughter, "and that the act (of killing) must be directly caused by the passion arising out of the provocation offered at the time of the affray, and not from a previous grudge or ill will," is hardly a correct statement of the law, as applicable to all cases.

We understand the law to be that the provocation to have this effect must be recent, and so recent as to show that there was not time for the blood to cool; but that it is not absolutely essential that it must be offered at the very time of the affray which resulted in the death of the party.  But we see no evidence which tends to show any other provocation offered by the deceased to defendant than that claimed to have been offered at the time of the affray, except that also claimed to have been given months before, and which, as a matter of law, was not so recent as to have had any such effect.  It therefore appears to us to have been a statement of the law, too broad for all cases, but true as applied to this.  And if wrong as an abstract proposition, it did not prejudice the defendant.

So far as the other parts of the charge are concerned, we may say that while the court refused to give certain charges asked for by defendant's counsel (and entirely proper to be given) in the language in which they were asked, they were given in substance, either in other special charges asked by him, or in the general charges.  And that the charges given on the subject of insanity or self-defense were certainly as favorable to the defendant as could rightly have been asked.

16.   It is strenuously urged by defendant's counsel, that the motion for a new trial should have been granted, on account of the misconduct during the trial of the prosecuting attorney and his assistant.

The evidence as to the language used by Mr. Wright in his argument to the jury is conflicting.   The trial court found as a matter of fact, that this is what he said on the point in question.   "Remember the loss of life and property that resulted from the verdict of that jury.   This is a case of murder in the first degree, and the people are watching you."   The case referred to, was that of The State v. Berner, the verdict in which is said to have induced the riot, which resulted in bloodshed and the burning of the court-house in this city.   It is impossible to define with accuracy the limits which should be placed on counsel in their arguments to a jury.   Very considerable latitude of course must be allowed, and yet it is true that the privilege may be so abused, that the court might well restrain counsel, or if satisfied that prejudice has resulted therefrom, might correct the evil by setting aside a verdict of guilty.   The court, when attention is called thereto, or even of its own motion, may see that the argument is properly conducted, and certainly, where a man's life is at stake, both court and counsel for the state should take care that just limits be placed on it, that injustice be not done to the defendant.   Of course, the argument should be based on the evidence received and where there is no evidence tending to show the existence of a particular state of fact, a claim that it did exist, should not be allowed; nor should counsel be permitted unchecked, to make statements to the jury as to what he could have proved if he had been allowed to do so.   And while it is entirely right and proper, for counsel to seek to impress the jury with the responsibility resting upon them, there should certainly be nothing in the nature of a threat or menace, if they should not find in a particular way.   We are of the opinion that the language found by the court to have been used by the assistant prosecuting attorney, partook too much of this last character, and that under the circumstances, it had better been left unsaid. But it is evident, that it was spoken in the presence and hearing of the watchful counsel for defendant.   That he made no appeal to the court to stop this kind of argument, and to advise the jury that they should not heed or be influenced by it. On the contrary, it is manifest from the finding of the court, that Mr. Dickson, in his reply to the assistant prosecuting attorney, frequently referred to what he had said on this point, and commented upon it, and drew from it an argument in favor of his client.   Under all of these circumstances, and without a showing of actual prejudice, we think the objection comes too late after a verdict.

17.   So far as the allegation of misconduct on the part of the prosecuting attorney is concerned, it appears in the finding of facts by the court.

It shows that while the witness Bennett was on the stand, Mr. Schwartz asked him a question to which Mr. Dickson objected, and Mr. Schwartz then stated to the court that he expected to prove that the wife of the defendant kept an assignation house, and that he had a room full of witnesses to prove it. The court sustained the objection of Mr. Dickson, and told the jury to disregard the statement of the prosecuting attorney.   Afterwards, during the argument of the prosecuting attorney to the jury, (provoked thereto as the court finds, by the frequent interruptions of Mr. Dickson, and his taunts as to the evidence he had sought to introduce by Bennett), he made use of this language, "Yes, and Bennett would have testified that Mrs. Thurman kept an assignation house, and that the fact was well known.   I had a room full of detectives and policemen to prove it."—Thereupon counsel for the defendant objected to the statement, and the court said, "Mr. Dickson, you provoked the remark; but since two wrongs will not make a right, I must restrain the prosecuting attorney from commenting upon matters which are not in testimony, and the jury will disregard the statement made by him."

The language of the prosecuting attorney was certainly improper, and should not have been used.   That it was provoked by Mr. Dickson representing the defendant, is some excuse for it.   The court seems to have done all that it could do

to prevent any injury to the defendant therefrom, and we see no evidence of actual injury. The fact that the wife did or did not keep an assignation house, was utterly immaterial on the issue being tried, and should not have had the slightest influence upon the result of the case.

18. It is urged that the trial court erred in refusing to set aside the verdict, on the ground that it was against the weight of the evidence. It is sufficient for us to say that if the jury believed the testimony of quite a number of witnesses as to what took place at and shortly before the homicide, and that of many witnesses as to the mental condition of defendant, there was certainly sufficient evidence to support the finding. At all events, the verdict is not so contrary to the evidence as to justify us in reversing the judgment on that ground.

We have given full consideration to this case, and have reached the conclusion that the judgment should be affirmed

W. L. Dickson, for plaintiff in error

Dan. T. Wright, Ass't Pros. Att'y for defendant in error.

---

148                    **BOARDS OF EQUALIZATION.**